595 So.2d 92 (1992)
Kenneth E. WEST and Rita West, his wife, Appellants,
v.
KAWASAKI MOTORS MANUFACTURING CORP., U.S.A. and Nosa, Inc., d/b/a Palmetto Kawasaki, Appellees.
No. 90-2359.
District Court of Appeal of Florida, Third District.
January 28, 1992.
Rehearing Denied April 14, 1992.
*93 Perse & Ginsberg and Lawrence Rodgers and R. Fred Lewis, Miami, for appellants.
Roth, Edward & Smith and Larry M. Roth and Kenneth B. Gardner, Orlando, for appellees.
Before HUBBART and COPE and GODERICH, JJ.
HUBBART, Judge.
The central issue presented for review is whether a plaintiff is barred by the doctrine of res judicata from bringing strict liability in tort and negligence claims against the manufacturer and retailer of an allegedly defective product  when the plaintiff, as here, has already suffered an adverse judgment in virtually the same products liability action, based on the same operative facts, brought by the plaintiff against the wholesale distributor of the subject product wherein it was determined that the product in question was not defective. For the reasons which follow, we conclude that res judicata bars the plaintiff from bringing these successive claims, and, consequently, affirm the final summary judgment entered below in favor of the manufacturer and retailer.

I
The operative facts of this case are undisputed. On January 4, 1985, the plaintiff Kenneth E. West, a motorcycle patrolman for the Metro-Dade Police Department, was involved in a traffic accident while operating his motorcycle in the course and scope of his employment. The floorboard of the motorcycle allegedly collapsed in the accident resulting in a severe injury to his foot; the plaintiff Rita West, Kenneth's wife, also suffered an alleged loss of consortium. The defendant Kawasaki Motors Manufacturing Corp. was the manufacturer of the motorcycle; the defendant Kawasaki Motors Corp. was the wholesale distributor of the motorcycle; and the defendant Nosa, Inc. d/b/a Palmetto Kawasaki was the retailer who sold the motorcycle to the Metro-Dade Police Department.
On June 18, 1986, the plaintiffs brought a products liability action in the circuit court below sounding in strict liability in tort, negligence and breach of implied warranty solely against the defendant wholesale distributor of the motorcycle. It was alleged that the floorboard of the motorcycle was defective and unreasonably dangerous in that it collapsed when the plaintiff Kenneth West applied pressure to it to avoid the traffic accident in question. On the defendant wholesale distributor's motion, the cause was removed to the United States District Court for the Southern District of Florida. After two years of extensive discovery, U.S. District Judge Kenneth Ryskamp entered a summary judgment for the defendant wholesale distributor on both the strict liability and negligence counts; the breach of implied warranty claim was abandoned by the plaintiffs. Judge Ryskamp concluded, in essence, in two separate summary judgment orders that, as a matter of law, there was no evidence of any defect in the design or manufacture of *94 the motorcycle. The plaintiffs appealed, and the Eleventh Circuit Court of Appeals affirmed without opinion. West v. Kawasaki Motors Corp., 909 F.2d 1491 (11th Cir.1990).
On December 20, 1988, the same day that Judge Ryskamp entered his first summary judgment order as stated above, the plaintiffs filed a second products liability action sounding in strict liability in tort and negligence against the manufacturer and retailer of the subject motorcycle in the circuit court below. This complaint was virtually identical to the one considered in the federal action; here, as in the federal suit, the plaintiffs alleged that the floorboard of the motorcycle was defective and collapsed, causing serious injuries in the subject traffic accident. The manufacturer and retailer filed answers raising the affirmative defense of res judicata, based on the summary judgment entered in favor of the wholesale distributor in the prior federal action, and subsequently moved for a summary judgment on that ground. The trial court granted the motion specifically based on the defense of res judicata. The plaintiffs appeal contending that the defense of res judicata is unavailable in this case because the defendants were not parties to the prior federal judgment.

II
It is settled, as a general rule in Florida, that in order to invoke the defense of res judicata or collateral estoppel so as to bar a pending action based on a final judgment entered in a prior action, it must be established that there is (1) an identity in the thing sued for in both actions, (2) an identity of the cause of action in both actions, (3) an identity of parties in both actions, and (4) an identity of the capacity of the parties in both actions. Seaboard Coast Line R.R. v. Industrial Contracting Co., 260 So.2d 860, 862 (Fla. 4th DCA 1972); Matthews v. Matthews, 133 So.2d 91, 94 (Fla. 2d DCA 1961) and cases collected. As stated by the Florida Supreme Court in Gordon v. Gordon, 59 So.2d 40, 43 (Fla.), cert. denied, 344 U.S. 878, 73 S.Ct. 165, 97 L.Ed. 680 (1952):
"We have held as a general proposition that when a final decree or judgment of a court of competent jurisdiction becomes absolute it puts at rest and entombs in eternal quiescence every justiciable, as well as every actually adjudicated, issue. This pronouncement is considered by us as controlling only when res adjudicata is the proper test. By this we mean it is not controlling except in an instance wherein the second suit is between the same parties and is predicated upon the same cause of action as was the first."
Id. at 43.
Florida courts, however, have not strictly adhered to the identity of parties requirement in all cases when invoking the doctrines of res judicata or collateral estoppel. To begin with, the term "parties" has been broadly interpreted to include more than just record parties  so that, for example, a person in privity with a record party, as well as a person who controls for his own interest a record party, may invoke the doctrine of res judicata or collateral estoppel. See, e.g., Seaboard Coast Line R.R., 260 So.2d at 283.
Beyond that, Florida courts have on occasion recognized exceptions to the identity of parties requirement under the res judicata or collateral estoppel doctrines where special fairness or policy considerations appear to compel it. In Zeidwig v. Ward, 548 So.2d 209 (Fla. 1989), the Florida Supreme Court held that a criminal defendant was barred from suing his former lawyer for legal malpractice allegedly committed in a prior criminal case where (a) the defendant had previously moved to set aside his criminal conviction based on ineffective assistance of counsel grounds and (b) had received an adverse judicial determination thereon that he had received effective assistance of counsel in the said criminal case. The defendant lawyer in the malpractice suit was allowed to assert the defense of collateral estoppel based on the prior criminal judgment although he was not a party to the post-judgment criminal proceeding. The court articulated its rationale for abandoning the identity of parties *95 requirement under the doctrine of collateral estoppel as follows:
"We conclude that, where a defendant in a criminal case has had a full and fair opportunity to present his claim in a prior criminal proceeding, and a judicial determination is made that he has received the effective assistance of counsel, then the defendant/attorney in a subsequent civil malpractice action brought by the criminal defendant may defensively assert collateral estoppel.
If we were to allow a claim in this instance, we would be approving a policy that would approve the imprisonment of a defendant for a criminal offense after a judicial determination that the defendant has failed in attacking his conviction on grounds of ineffective assistance of counsel but which would allow the same defendant to collect from his counsel damages in a civil suit for ineffective representation because he was improperly imprisoned. To fail to allow the use of collateral estoppel in these circumstances is neither logical nor reasonable.
The public policy justification for the application of collateral estoppel in this type of circumstance was well stated by the court in Johnson v. Raban, 702 S.W.2d 134 (Mo. Ct. App. 1985), where it stated:
`[P]ublic policy dictates that a person convicted of a crime who has failed in his attack upon his conviction both directly and collaterally should not be permitted to recover against his attorney in a civil malpractice action for damages allegedly arising out of the attorney's handling of his defense. It would undermine the effective administration of the judicial system to ignore completely a prior decision of a court of competent jurisdiction in this state on the same issue which plaintiff seeks to relitigate in a subsequent action. Id. at 138.'"
548 So.2d at 214.
In Phillips v. Hall, 297 So.2d 136 (Fla. 1st DCA 1974), the court held that a plaintiff was barred by res judicata from suing an employee of a supermarket in a negligence action for injuries caused by the employee's negligent operation of a handpowered merchandise cart. The plaintiff had previously sued the employee's employer [the supermarket] and had recovered a judgment for the same injuries arising out of the same accident. Although the employee was not a party to the prior negligence action against his employer, he was nonetheless allowed to raise the defense of res judicata based on the judgment entered in the prior action. The court adopted the rationale of a New Hampshire case which reached the same result upon the theory that in master/servant vicarious liability cases, the master and servant are not joint tortfeasors, and, consequently, a plaintiff who elects to sue only one of these two potentially liable parties for a single wrong may not receive a judgment against one party and thereafter attempt to pursue the other.
Similarly, fairness and policy considerations dictate that in products liability cases an exception should be recognized to the identity of parties requirement under the doctrines of res judicata or collateral estoppel. In such cases, there are three potentially liable parties, none of whom are joint tortfeasors: the manufacturer, the wholesale distributor, and the retailer of the allegedly defective product. If the plaintiff elects to sue only one or two of the potentially liable parties for a single injury and proceeds to judgment against such party or parties, he should not, in all fairness, be allowed to relitigate the same issues resolved in the first case and proceed against the remaining party or parties  particularly, when, as here, it is determined in the prior action that the product in question is not defective.
The court in Billman v. Nova Products, Inc., 328 So.2d 244 (Fla. 1st DCA 1976) has, in effect, recognized this exception and held that a plaintiff in a products liability case was barred by collateral estoppel from pursuing a breach of implied warranty claim against the manufacturer of an allegedly defective product, although the identity of parties requirement was not satisfied. In an earlier products liability case involving the same accident and underlying facts, *96 the plaintiff brought a breach of implied warranty suit against the retailer of the same allegedly defective product for the same injury and secured a jury verdict in its favor; moreover, the trial court directed a verdict against the manufacturer in a third-party indemnity claim brought by the retailer. Although the manufacturer was not a party defendant in the prior breach of implied warranty action against the retailer, it was nonetheless allowed to raise the defense of collateral estoppel based on the judgment secured by the plaintiff against the retailer to bar a subsequent breach of implied warranty action against the manufacturer. The court reached this result based on the following fairness and policy considerations:
"In cases involving the relationship of indemnitor and indemnitee, liability of more than one party is dependent upon identical issues. In such situations, when the complaining party has a full opportunity to litigate those issues against one of the parties, and has obtained a favorable judgment, he is not permitted to relitigate the same issues in a new action against the other party. He has had his day in court on the issues, and against the party of his choosing who was closely related to the other party. Under the doctrine of collateral estoppel, he is precluded from relitigating the same issues. There must be an end to litigation. Eisel v. Columbia Packing Co., 181 F. Supp. 298 (D.Mass. 1960)."
Billman, 328 So.2d at 246.
This result is in full accord with the weight of authority on this issue throughout the country which precludes successive suits in products liability cases against parties in the distribution chain of a product  i.e., the manufacturer, the wholesale distributor, and the retailer  when based, as here, on the same claims and underlying facts.[1] Indeed, some courts have concluded *97 that the manufacturer and retailer are in virtual privity with one another in such cases so that either party may set up a judgment obtained in a prior identical suit brought against the other party as a res judicata or collateral estoppel bar against the present suit.[2]
The most recurring theme in all of these cases, whether couched in res judicata or collateral estoppel terms, is that a plaintiff who has had an opportunity to litigate his claim of injury caused by an allegedly defective product against one of the parties in the chain of distribution of the product  i.e., the manufacturer, wholesale distributor and retailer  has had his day in court and should not thereafter be able to pursue another party in the same chain with the same allegations. As stated in Eisel v. Columbia Packing Co., 181 F. Supp. 298 (D.Mass. 1960) (cited in Billman, supra):
"[I]nquiries should be made as to whether [1] plaintiff had a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time, ... . [and]
[2] whether the second defendant has such a factual relationship to the first defendant that it is equitable to plaintiff to give the second defendant the benefit of the first defendant's victory.
In the case at bar there is nothing inequitable in defendant [manufacturer] invoking the doctrine of collateral estoppel. The plaintiff chose to proceed in [the first court against the retailer]. He chose to go to trial there without waiting to find out whether he could effectively join in the same suit the indemnitor [manufacturer] and indemnitee [retailer]. Plaintiff foresaw that, whether he sought to hold the indemnitor or the indemnitee, he would have the burden of proving that his injury was caused by the [product]. On that issue he had all the relevant evidence. He has had his day in court on the issue in a forum of his own choosing and against a party of his own choosing who was closely related to the present defendant.

While one of the strongest policies in the law is that every man shall have an opportunity to be heard, there is no persuasive public policy for allowing him a second opportunity when he seeks to raise on the second occasion an issue which arose in substantially the same context on the first occasion, when that issue was fully tried, and when, if plaintiff had succeeded on his first effort, the first defendant would have had a right of indemnification against the second defendant."
*98 181 F. Supp. at 301 (emphasis added). We fully agree with this rationale.

III
Turning to the instant case, we have no trouble in concluding that the plaintiffs are barred by the doctrine of res judicata from pursuing their products liability action sounding in strict liability in tort and negligence against the manufacturer and retailer of the allegedly defective motorcycle. This is so because the plaintiffs in a prior products liability action in federal court elected to bring strict liability in tort and negligence claims solely against the wholesale distributor of the motorcycle based on the same underlying facts  and thereafter suffered an adverse summary judgment upon a determination that the motorcycle in question had no design or manufacturing defect. Having elected to sue only the wholesale distributor of the motorcycle for the alleged defective floorboard in the motorcycle, and having had a full opportunity to litigate their claims in federal court with an adverse result, they should not in all fairness be allowed to relitigate the same claims, based on the same underlying facts, against the manufacturer and retailer of the same motorcycle. Based on the above-stated authorities, the plaintiffs are bound by the prior adverse judgment against the wholesale distributor, and, consequently, the manufacturer and retailer may set up this judgment as a bar to the instant suit under the doctrine of res judicata although they were not parties to the prior action. The final summary judgment entered in favor of the manufacturer and retailer based on the doctrine of res judicata is therefore, in all respects,
Affirmed.
NOTES
[1] See, e.g., Robinson v. Volkswagen of America, Inc., 803 F.2d 572 (10th Cir.1986) (applying Okla. law; plaintiff sued both auto distributor and manufacturer on one theory: strict liability for defective design and manufacture; jury found in favor of defendants; appellate court, finding evidentiary error, refused to remand for new trial as to distributor only, stating [without reference to res judicata], "[b]y returning a verdict in favor of [manufacturer], the jury determined that the automobile was not defective, and this issue cannot be relitigated"); Brown v. R.D. Werner Co., 428 F.2d 375 (1st Cir.1970) (applying N.H. law which had rejected the mutuality of parties requirement for defensive use of collateral estoppel, held, without discussing privity, manufacturer in strict liability and negligent design/inspection action entitled to raise as defense the judgment in favor of retailer in plaintiff's prior suit raising the same issues (identical causes of action); no discussion of usual distinction that collateral estoppel is applicable where causes of action are different); Eisel v. Columbia Packing Co., 181 F. Supp. 298 (D.Mass. 1960) (cited in Billman [Fla. case]; on a defensive collateral estoppel theory but referring to retailer and manufacturer as indemnitee/indemnitor, held that where plaintiff elected to proceed with state trial against retailer and lost, manufacturer entitled to summary judgment in federal diversity action making identical injury-caused-by-product allegations); Smith v. Goble, 248 Ark. 415, 452 S.W.2d 336 (1970) (implied warranty case against retailer and manufacturer; without discussing privity, held pre-verdict dismissal of retailer harmless since jury's exoneration of auto manufacturer of alleged latent defective brakes "estopped [plaintiff] to complain against [retailer] on a derivative liability upon the theory of an implied warranty.") (emphasis added); Meyer v. Droms, 68 A.D.2d 942, 414 N.Y.S.2d 67, 68 (App.Div.) (example of modern trend in defensive collateral estoppel; where plaintiff lost strict liability, negligence, breach of warranty, statutory violations action against manufacturer of hay unloader wagon, collateral estoppel bars identical action against distributor; no discussion about the fact that the asserted causes of action were identical; "[t]he defense may be asserted by a stranger to the prior action provided that the party against whom it is being used had a full opportunity to litigate the particular issue."), appeal denied, 47 N.Y.2d 709, 419 N.Y.S.2d 1025, 392 N.E.2d 1259 (1979); Day v. Volkswagenwerk Aktiengesellschaft, 318 Pa.Super. 225, 464 A.2d 1313, 1318-19 (1983) (same court as Thompson; reviewed various cases involving "successive products liability cases between retailer and manufacturer" which avoided the res judicata privity requirement by basing holdings on collateral estoppel [all included in this listing] and refused to reaffirm Thompson's privity holding, preferring instead to decide case under collateral estoppel theory: "a broader concept than res judicata," which under Pa. law does not require identity of parties as long as "the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication"; held that issue need not have been decided by a jury in order for it to have been "litigated" in the prior action); Cantrell v. Burnett & Henderson Co., 187 Tenn. 552, 216 S.W.2d 307 (1948) (finding that privity in res judicata situations referred to the relationship of parties to the subject matter of the litigation and relying on vicarious liability [master/servant & lessor/lessee] cases and ruling that a manufacturer and retailer occupied similar relationships so that strict privity should not be required for res judicata to bar subsequent litigation against manufacturer where jury verdict had determined in favor of retailer that car was not defective; relied on 36 years later in Phillips for its holding that there is privity between a retailer and manufacturer); see also Mercer v. Honda Motor Co., 551 F. Supp. 233 (M.D.Fla. 1982) (plaintiff barred by res judicata from bringing products liability action against manufacturer of allegedly defective motorcycle; plaintiff had previously brought a products liability action against the wholesale distributor of the motorcycle based on the same facts and lost before a jury; the wholesale distributor was a wholly owned distributor of the manufacturer).
[2] Thompson v. Karastan Rug Mills, 228 Pa.Super. 260, 323 A.2d 341, 345 (1974) ("Res judicata does not require absolute identity, but permits the persons and parties or their privies to be the same. The law of Pennsylvania recognizes that a manufacturer supplier of goods stands in `vertical privity' in the `chain of sale' to the `retailer and the purchaser'"; the subject matter of both suits "is the quality of the rugs sold and delivered to the appellant"; the first suit determined that the rug was "`of proper quality and merchantability'" and plaintiff is bound by that ruling); Phillips v. General Motors Corp., 669 S.W.2d 665, 669 (Tenn. Ct. App. 1984) (decided on collateral estoppel theory because different causes of action pled; however, Tenn. required identity of parties; discussing Cantrell (see supra note 1), "[t]he Tennessee rule holds that privity as used in the context of res judicata does not embrace relationships between persons or entities, but rather to the subject matter of the litigation"; under this rule and the relationship of a manufacturer and retailer to the products liability action, court finds that Cantrell implicitly found privity between those parties).