**In re AMERISERVE FOOD DISTRIBUTION INC., et al., Debtors.**

**Lamb–Weston, Inc., Plaintiff,**

v.

**Ameriserve Food Distribution, Inc., et al., Defendants.**

**Nos. 00–0358(PJW), 00–748 SLR.**

United States District Court, D. Delaware.

Sept. 28, 2001.

Duane E. Werb, and Kimberly E.C. Lawson, Werb & Sullivan, Wilmington, Delaware, Counsel for plaintiff Lamb–Weston, Inc., Of counsel, Hartley B. Martyn, and Mark A. Amendola, Cleveland, Ohio.

Laura Davis Jones, and Michael R. Seidl, Pachulski, Stang, Ziehl, Young & Jones, P.C., Wilmington, Delaware, Counsel for defendant AmeriServe Food Distribution, Inc., Of counsel, Timothy D. Elliott, and Brandon Fox, Kirkland & Ellis, Chicago, Illinois.

## MEMORANDUM OPINION

ROBINSON, Chief Judge.

## I. INTRODUCTION

This matter is before the court on defendant AmeriServe Food Distribution, Inc.'s ("AmeriServe") motion for partial summary judgment. (D.I.25) Plaintiff Lamb–Weston, Inc. ("Lamb–Weston") has filed its opposition and AmeriServe has filed a

reply. (D.I.44, 47) For the reasons that follow, AmeriServe's motion for partial summary judgment is denied.

## II. STANDARD OF REVIEW

A party is entitled to summary judgment only when the court concludes "that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no material issue of fact is in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348(quoting Fed.R.Civ.P. 56(e)). "Facts that could alter the outcome are 'material', and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assur. Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The mere existence of some evidence in support of the party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that factual issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This court, however, must "view all the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995); *Pacitti v. Macy's*, 193 F.3d 766, 772 (3d Cir.1999).

## III. FACTS

As a dealer in perishable commodities within the meaning of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499 *et seq.*, ("PACA"), AmeriServe purchases and sells perishable agricultural commodities in interstate commerce on a wholesale basis. (D.I.5) Lamb–Weston is engaged in the business of selling potato products to purchasers who resell these potato products. (D.I.1) Lamb–Weston sold to AmeriServe on credit potato products, which have been valued by Lamb–Weston at $4,974,966.46. Prior to payment, AmeriServe filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code ("the Code") on January 31, 2000. (D.I.5) On February 1, 2000, affiliated and subsidiary debtors filed Chapter 11 petitions and the cases were procedurally consolidated by order dated February 2, 2000. AmeriServe has been operating its business as a debtor-in-possession since that time.

On March 17, 2000, AmeriServe was ordered to identify those claims subject to statutory protection under PACA. (D.I.5) Based on two court decisions, AmeriServe denied Lamb–Weston's claims, asserting that the potato products did not fall under PACA protection for perishable products.

Subsequently, Lamb–Weston filed an adversary complaint seeking a declaratory judgment that the french fries it sold to AmeriServe are subject to and covered by the statutory trust arising under PACA. (Bankruptcy Docket ("BK") 4) By Order dated July 27, 2000, the bankruptcy court granted Lamb–Weston's motion and concluded the adversary proceeding was noncore. (BK 5) On August 10, 2000, Lamb–Weston moved for and was granted a with-

drawal of reference pursuant to 28 U.S.C. § 157(d). (D.I.1)

## IV. DISCUSSION

 Defendant AmeriServe brings this motion for partial summary judgment arguing that a prior bankruptcy court finding against plaintiff estops it from pursuing this action. (D.I.25) Defendant's motion is premised upon defensive collateral estoppel, defined as a defendant's attempt to "prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." *Parklane Hosiery Company, Inc. v. Shore,* 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Whether used offensively or defensively, the party invoking issue preclusion must demonstrate that four factors are met: 1) the issue to be precluded is the same as that involved in the prior action; 2) the issue was actually litigated; 3) it was a valid and final judgment; and 4) the determination was essential to the prior judgment. *Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.,* 63 F.3d 1227, 1231 (3d Cir.1995) (*quoting In re Graham,* 973 F.2d 1089, 1097 (3d Cir.1992)).

 Even if all criteria are satisfied, application of the doctrine is "subject to overriding fairness determination by the trial judge." *Burlington,* 63 F.3d at 1231. The party resisting issue preclusion should be "permitted to demonstrate... that he did not have 'a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time'". *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 333, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (*quoting Eisel v. Columbia Packing Co.,* 181 F.Supp. 298, 301 (D.Mass.1960)). As applied here, the court finds all four prerequisites to the doctrine's application are met essentially for the reasons plaintiff advances. What cannot be established with confidence, however, is that Lamb–Weston had a full and fair opportunity to litigate the core issue.

Specifically, whether the bankruptcy hearing permitted Lamb–Weston a full and fair opportunity to litigate first requires a recognition that the bankruptcy rules closely mirror the federal rules of civil procedure. *In re S3 Ltd.,* 252 B.R. 355 (Bankr.E.D.Va.2000) (applying FRCP 26 and its expert requirements to bankruptcy proceedings). This includes discovery relating to expert witnesses who, under the Federal Rules of Civil Procedure, R. 26(a)(2)(C), must have their reports supplied within 90 days of trial. The purpose of the rule is to avoid surprise, permit discovery to test expert opinions, and prevent the obvious prejudice of secret testimony.

With these precepts in mind, the court turns to a review of the bankruptcy record concerning the events and hearing surrounding the french fry issue in the Long John Silver ("LJS") bankruptcy proceeding. (D.I.25, Exs.4, 5, 6) There, Lamb–Weston supplied french fries to the debtor LJS and sought payment for the potato products supplied on credit before the bankruptcy. LJS argued Lamb–Weston's french fries were not covered under the trust created by PACA, essentially, because the fries were battered. Lamb–Weston rejected this characterization. At a hearing held on the matter, Lamb–Weston presented one witness and LJS proffered two witnesses. Post hearing briefing occurred.

On February 10, 1999, the bankruptcy court ruled that the specially engineered batter coating applied to the french fries removed them from the category of perishable agricultural commodities protected under PACA. *In re Long John Silver's Restaurants, Inc.,* 230 B.R. 29, 35 (Bankr. D.Del.1999). Lamb–Weston appealed the

decision, but later withdrew its appeal. (D.I. 44)

During the hearing, LJS called two witnesses: employee Sean Muldoon and expert Edward O'Neill. (D.I.25, Ex. 8) While Muldoon appeared to add little to the analysis, O'Neill offered opinion on the main issue and refuted the testimony of Lamb–Weston's only witness, Jerry Sloan.

Particularly, Sloan, Lamb–Weston's director of research and development, holds bachelor and master degrees in food science and technology. He explained Lamb–Weston's production process as it relates to PACA and was able to squarely refute the contents of Muldoon's affidavit, supplied months earlier. (*Id.*, at 20) Muldoon's position was likewise challenged in July 1998 by the reply affidavit of Lamb–Weston's Engineering Manager, Randall Spry. It appears clear that Lamb–Weston prepared their case, in large part, based on the only witness LJS timely identified: Muldoon.

Within days of the hearing, however, LJS's strategy apparently changed. O'Neill conceded his report was not sent until "late on the 7th" of October—less than two full days before the hearing. (*Id.* at 80) Until that point, it appeared LJS would attempt to refute Sloan's expert opinion solely with Muldoon—who holds only a business administration degree and is merely a purchaser of food and paper products. (*Id.* at 47) O'Neill, by contrast and like Sloan, holds a master degree in food science and technology. (*Id.* at 73) The court can only conclude that LJS decided, at the last minute, to retain an expert equal in caliber to Sloan. Before that time, Lamb–Weston had reason to believe LJS's position was fully disclosed.

Beyond the lateness of O'Neill's report, the reliability of the testimony itself is suspect. For example, O'Neill's opinion appears as a compilation of hearsay, ranging from internet research, to sending an associate to the library, to talking "with friends and associates" in business about batter coating. (*Id.* 79, 89) While an expert may base an opinion on hearsay, it must be of a type regularly relied upon by others in the field. Fed.R.Evid. 703. It cannot be said that internet and library research, such as here, is the type "experts" customarily rely upon in forming legitimate opinions.

Although this court is cognizant of motion practice as an accepted method of addressing issues such as these in the bankruptcy context, neither the rules of procedure nor concepts of fundamental fairness permit diminution of a litigant's rights. Those include an adverse party's entitlement to timely receive expert reports and conduct discovery in order to evaluate whether and to what extent the basis of such opinions can be challenged. With this in mind, the court cannot view as fair the defense expert report arriving at Lamb–Weston's door a "couple of days" before disposition. Such conduct, absent an adversary's opportunity to thoroughly investigate the opinion, casts doubt that Lamb–Weston had "a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time." *Blonder–Tongue,* 402 U.S. at 333, 91 S.Ct. 1434.

As a final note, AmeriServe suggests that only offensive collateral estoppel permits a fairness assessment. (D.I.25, 47) While the majority of courts do ascribe to an equitable overview in offensive estoppel context, the court is unconvinced that such a bright line has yet been drawn. *Id.* (applying the fairness analysis in a defensive collateral estoppel context). Indeed, estoppel is a doctrine grounded in equity. To apply it to some cases and not to others is itself unfair, and certainly does not comport with the notion that there is "no intrinsic difference" between offensive and defensive issue preclusion. *Parklane Ho-*

*siery Co.,* 439 U.S. at 331 n. 16, 99 S.Ct. 645.

## V. CONCLUSION

In light of the court's reservations about the full and fair hearing conducted in the *Long John Silver's* matter, collateral estoppel does not apply and, therefore, AmeriServe's motion for partial summary judgment is denied.